```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/22/2022_
```

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TIPSY NAIL CLUB LLC, SALON PHOENIX COSMETOLOGY, LLC, RAPHA MASSAGE, LLC, ENLIGHTEN MASSAGE THERAPY LLC, THE FACIAL BAR, LLC, SALON GOLDYN, INC., and SALON HAIRROIN, INC., on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

CLASSPASS INC., CLASSPASS, LLC, FRITZ LANMAN, and PAYAL KADAKIA,

    Defendants.

No. 21 Civ. 8662 (AT)

## ESI ORDER

Plaintiffs Tipsy Nail Club LLC, Salon Phoenix Cosmetology, LLC, Rapha Massage LLC, Enlighten Massage Therapy LLC, The Facial Bar, LLC, Salon Goldyn, Inc., and Salon Hairroin, Inc. ("Plaintiffs") and Defendants ClassPass, Inc., ClassPass, LLC, Fritz Lanman, and Payal Kadakia ("Defendants") (each a "Party" and together the "Parties"), have agreed to the terms of this Order (the "ESI Order") to govern the processing and production of electronically stored information ("ESI") and hard copy documents and other physical materials ("Hard Copy Materials") in the above-captioned action (the "Action").

I.  **SCOPE**

  a.  Federal Rule of Civil Procedure 34 permits the parties to specify the form or forms in which ESI and documents are to be produced. Pursuant to Rule 34, this ESI Order shall govern production of both ESI and Hard Copy Materials by the Parties in this Action. The ESI Order shall also govern productions made by any third party subpoenaed in this action, unless

otherwise agreed to by the Parties and the third party.  Accordingly, this ESI Order shall be attached to any subpoena properly issued in this litigation.

  b. The ESI Order does not alter the parties' obligations to comply with the applicable Federal Rules of Civil Procedure and applicable local rules regarding the production of ESI and Hard Copy Materials.

  c. All productions of ESI or Hard Copy Materials in the Action that occur after entry of this ESI Order shall comply with its terms.

  d. The Parties may mutually modify or revise this ESI Order by unanimous agreement as circumstances dictate.  Such modifications or revisions shall be made in writing.  Should any of the Parties propose a modification or revision to this ESI Order to which any other of the Parties objects, and the Parties cannot resolve their differences after a good-faith attempt to do so, the Parties may raise the matter for determination by the Court.

**II. GENERAL AGREEMENTS**

  a. <u>Identification of ESI</u>.  The Parties may identify ESI: (a) by identifying and selecting custodians and data repositories most likely to possess relevant documents; and (b) by applying agreed upon search terms to identifiable data repositories and custodian data sources.  The Parties agree to conduct reasonable searches for and produce unique, responsive documents from custodian data sources and data repositories within a Party's possession, custody, or control to the extent an identified custodian or information technology professional reveals that such locations may contain responsive information.

  As soon as practicable, the Parties shall meet and confer to discuss the use of reasonable search terms, the custodial data repositories to be searched, and a date range as a means to identify relevant ESI for review and production, with an expectation that the Parties will reach an

agreement on these issues.  Nothing in this paragraph shall operate to limit a Party's obligations under the Federal Rules of Civil Procedure and applicable decisional authority.  The Parties may cull or filter "spam" email with common commercial domain names and disclose to the other Parties the culling performed.  Except as provided herein, the Parties shall not use any other technology to identify or cull responsive ESI (e.g., technology-assisted review) without first disclosing the intended use of such technologies to the other Parties and obtaining the consent of the other Parties.

The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.  The Producing Party shall make determinations of discoverability, responsiveness and privilege.

If the Parties cannot resolve any dispute regarding this section, without prejudice to their rights to seek judicial relief, consistent with The Sedona Conference Principles, Principle 6, the responding party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

      b.      <u>Discovery Concerning Preservation and Collection Efforts</u>.  Discovery concerning the preservation and collection efforts of another Party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter.  If there is a reasonable dispute concerning the scope of a Party's preservation or collection efforts, before discovery about such efforts is initiated, the Parties or their counsel shall meet and confer to address the specific stated need for such discovery, its relevance to claims and defenses, its proportionality to the needs of the case, and the availability and suitability of alternative, less burdensome means to obtain the information.

c. <u>On-Site Inspections of ESI</u>.  On-site inspections of ESI under Rule 34(b) shall be permitted, if at all, only upon a good-faith showing by the requesting Party of good cause and specific need or upon agreement of the Parties.  As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate.

d. <u>Non-Discoverable ESI</u>.  Consistent with the proportionality standard, and absent a Party's specific written notice for good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

1. ESI deleted in the normal course of business (and no longer readily accessible) before the time a preservation obligation in this matter came into effect;

2. Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data more accessible elsewhere;

3. Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

4. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

5. On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

6. Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

      7.      Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), to the extent that such data is substantially duplicative of data more accessible elsewhere;

      8.      Data stored on photocopiers, scanners and fax machines;

      9.      Server, system, network, or software application logs;

      10.      Data remaining from systems no longer in use that is unintelligible on the systems in use; and;

      11.      Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

    e.    <u>Disaster-Recovery Backup Data</u>.  Consistent with the proportionality standard, and absent a Party's specific written notice for good cause, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.  Absent a showing of good cause, such backup media shall be considered to be not reasonably accessible.

## III.    PRODUCTION FORMAT OF ESI

ESI shall be produced in the following format:

    a.    **TIFF Images.**  Except as otherwise provided, single-page 300 dpi CCITT Group IV black and white TIFFs shall be produced.  Images will show any and all text and images which would be visible to the reader using the native software that created the documents.  For example, TIFFs of email messages should include the BCC line.  Documents for which the associated native version contains track changes, comments, highlighting, or other mark-up shall

be produced as single page 300 dpi JPG images with JPG compression. The Parties will also accommodate reasonable requests for production of specific production images in color.

All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length across the entire production; (3) be sequential within a given document; and (4) identify the producing party. Any confidentiality designation shall be branded on the document's image in a manner that does not obliterate or obscure any part of the underlying images.

b. **Database Load Files/Cross-Reference Files.** Documents shall be produced with (1) a Concordance delimited load file(s) and (2) an Opticon delimited cross-reference file(s) showing document breaks.

c. **Unique IDs.** Each image shall have a unique file name which will be the Bates number of that page (e.g., ABC_00000001.TIF).

d. **Text Files.** For each document, a document-level text file shall be produced. If available, the text of non-redacted ESI being produced shall be extracted directly from the native file. OCR text files shall be produced for documents that do not contain extractable text in the native file and for redacted documents. Each text file will be named for the beginning Bates number of its corresponding document (e.g., ABC_00000001.TXT).

e. **Unique Documents.** The Parties shall attempt to globally deduplicate only exact duplicate documents based on MD5 or SHA-1 hash values; for emails, deduplication will be performed at a family level. No Party shall remove through deduplication any attachment to any email, regardless of whether the attachment is duplicative of any other document. "All Custodians" metadata for a given document shall reflect all custodians of the document. Should the information provided in the All Custodians metadata field produced become outdated

due to rolling productions, an overlay file providing all of the custodians for the affected documents will be produced. Removal of documents from production using near deduplication is not permitted. Where multiple email messages are part of a single chain or "thread," a party is generally only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced. However, a party may request at any time that threading shall not apply to certain time periods, threads, or where appropriate, custodians, and may request the prompt reproduction of documents withheld on the basis of threading. Reasonable requests shall not be denied.

   f.  **Parent-Child Relationships**. Parent-child relationships (*e.g.*, the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range metadata as specified in Sections III(g) and III(h) below.

   g.  **Required Metadata Fields.** The following metadata shall be produced within the Concordance delimited file described above for each document:

  BegDoc
  EndDoc
  BegAttach
  EndAttach
  Record Type
  Custodian
  All Custodians
  PageCount
  ParentID

AttachIDs

Production Volume

TextLink

NativeLink

  h.  **Additional Metadata Fields.** The following metadata shall be produced within the Concordance delimited file to the extent the metadata exists, is reasonably accessible and is not subject to a claim of privilege or work product protection:

From

To

CC

BCC

Document Subject

Email Subject

Document Title

Document Author

Created Date/ Time

Family Date/ Time

Last Modified Date/Time

Last Edited By

Email Sent Date/Time

Email Received Date/Time

File Size

Path

Extension

File Type

MD5 Hash

File Name

AttachCount

AttachName

Conversation ID

Redacted

8

      i.      **PDF Documents**. PDF documents will be produced in TIFF format with hidden information, comments, notes, and any other markup displayed.

      j.      **Native Form.** Microsoft Excel or other spreadsheet files not requiring redaction; all multimedia files (including audio, and video files); Microsoft Access and other personal (non-enterprise) database files; PowerPoint files and system files shall be produced in native form. If a Party feels it is necessary to have a particular produced document provided in native format and this Agreed Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format and provide a specific Bates range for each document it wishes to be produced in native format, and reasonable requests will be accommodated by the producing Party. To the extent a Party believes that the issues necessitating the native production of a particular document apply more broadly to certain categories of documents, the parties agree to meet and confer regarding the native production of that category of documents. The Parties also agree to meet and confer within five (5) business days as to any dispute regarding requests for native production of documents otherwise produced only as TIFF files, before the issue is submitted to the court. Native PowerPoint presentations that require redactions shall be produced as TIFF images, which shall include speaker notes and "hidden" slides as extracted by the software used to process the documents. Color PowerPoint presentations requiring redactions shall be converted to color images, and black and white PowerPoint presentations requiring redactions shall be converted to black and white TIFF images, provided that proper grayscale printing is enabled to ensure that any dark colored text is not hidden by dark objects/drawings around the text. These documents will also be identified as "Redacted" within the "REDACTED" field in the load file.

For documents produced in native format pursuant to this provision, a single-page placeholder TIFF image marked with the production Bates number and confidentiality designation shall be produced with the phrase "DOCUMENT PRODUCED IN NATIVE FORMAT" branded in the center of the page. The native produced file shall be named to the corresponding Bates number and any confidentiality designation, for example: ABC_00000001_CONFIDENTIAL.xlsx. The corresponding load file shall include NativeLink information for each native file that is produced. The original name of the natively produced file shall be provided in the File Name metadata field associated with the natively produced document as specified in Section II(g) above.

k. Documents which cannot be converted to TIFF image and are viewable shall be produced in native format with a TIFF image slipsheet, according to the same specifications in the second paragraph of Section III(j) above, except the TIFF image shall instead state: "DOCUMENT CANNOT BE RENDERED."

l. **Structured Data.** In instances in which electronically stored information in a commercial or proprietary database format (as opposed to Microsoft Access and similar personal database files) can be produced in an already existing and reasonably available report form, the Parties must produce the information in such report form. If an existing report form is not reasonably available, then the Parties shall meet and confer regarding the content and format of a data extraction from such structured data source. The Parties shall discuss and attempt to agree upon the sets of data or fields to be included in the extraction and the format in which such data shall be produced, and will reasonably exchange technical information with respect to Structured Data as is necessary to facilitate such meet and confers, including, for example, identification of available fields, available data dictionaries, mapping documents, time period for which data is

reasonably available, and other information to allow the Requesting Party to understand the data systems or applications, including sample reports or extracts of Structured Data prior to its final production. The Parties reserve all rights to object, including but not limited to, objections for relevance, undue burden, and/or inaccessibility.

      m.    **DE-NIST.** Common program and system files defined by the NIST library (http://www.nsrl.nist.gov/) shall not be produced.

## IV. PRODUCTION FORMAT OF HARD COPY MATERIALS

Hard Copy Materials shall be produced in the following format:

      a.    **TIFF Images.** Single page 300dpi CCITT Group IV black and white TIFFs shall be produced. The Parties will accommodate reasonable requests for production of specific production images in color. Color images shall be produced as single page 300 dpi JPG images with JPG compression.

      b.    **Database Load Files/Cross-Reference Files.** Documents shall be produced with (1) a Concordance delimited load file(s) and (2) an Opticon delimited cross-reference file(s) showing document breaks and attachment ranges.

      c.    **Unique IDs.** Each image shall have a unique file name which will be the Bates number of that page (e.g., ABC_00000001.TIF).

      d.    **OCR Text Files.** For each document produced, a document-level OCR text file shall be produced. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process if they are present in the OCR tool and within the control of the operator performing the OCR. Each text file will be named for the beginning Bates number of its corresponding document (e.g., ABC_00000001.TXT).

e.      **Unitizing of Documents.**  When scanning paper documents, , distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized). Parent-child relationships (the association between attachments and their parent documents) shall be preserved. In the case of an organized compilation of separate documents -- for example, a binder containing several separate documents behind numbered tabs -- the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). If, upon review, the requesting party deems the image or text quality of a specific hard-copy document to be insufficient, this will be brought to the attention of the producing party, and the Parties will meet and confer within five (5) business days of being notified of the issue before submitting the issue to the Court.

f.      **Metadata Fields.**  The following metadata fields shall be produced: (i) BegDoc; (ii) EndDoc; (iii) BegAttach; (iv) EndAttach; (v) Record Type; (vi) ParentID; (vii) Attach IDs, (viii) Page Count, (ix) Production Volume, (x) TextLink, (xi) Redacted and (xii) Custodian (containing the name of the custodian of a document).

V.      **PRODUCTION DELIVERY/MEDIA**

a.      Documents will be produced via secure FTP, or similar electronic file transfer method, or on portable hard drives as may be required due to production size or technical limitations affecting a Party's ability to deliver via secure FTP. Productions shall have the following four directories: (1) IMAGES for the Document images; (2) DATA for the .dat metadata load file and .opt image load files; (3) TEXT containing the extracted text/OCR files;

and (4) NATIVES containing the original native files. The producing Party shall accompany all productions with a letter or email identifying the production date and the Bates number range of the materials being produced. Any replacement productions shall cross-reference the original production, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

## VI. EXCEPTION DOCUMENTS

The Parties will make reasonable efforts to ensure that all container files (such as PST or ZIP files) are successfully extracted, and all encrypted or password-protected Documents are successfully accessed and decrypted, in order to ensure effective search, review and production under the requirements of this ESI Order. Upon reasonable request, the Producing Party also agrees to produce a written description of the efforts undertaken by the Producing Party to extract, decrypt or otherwise access any unsearchable or unreviewable files ("exception document"), and such requests will not be unreasonably denied. Any exception document which is part of a parent/attachment group to be produced will be identified by a Bates numbered placeholder TIFF image bearing the legend, "DOCUMENT CANNOT BE VIEWED."

## VII. INFORMATION WITHHELD ON PRIVILEGE

a. Nothing in this ESI Order prevents a Party from withholding documents or information protected from discovery by the attorney-client privilege, work product doctrine, joint defense privilege, or other applicable privilege (collectively, "Privileged Information"); information prohibited from disclosure by federal, state, or foreign statutes or regulations; medical information concerning an individual; and highly sensitive personal identity information.

      b.      The Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege or the work product doctrine and/or any other applicable privilege, the producing party will provide a log with each production of privileged material, in an electronically searchable format (e.g., Excel), containing, for each document claimed as privileged, and as required by applicable law, including Fed. R. Civ. P. 26(b)(5)(A): the following information: (a) date; (b) title, subject, and/or file name; (d) Bates-number (if applicable); (e) author; (f) the identity of all persons designated as addressees, copyees or blind copyees (indicating whether a person was an addressee, copyee, or blind copyee); (g) the custodians; (h) and a description of the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

      c.      The Parties will each provide a list of any attorneys or legal staff, along with their respective positions, as an appendix to each privilege log.

      d.      The Parties need not log: (1) communications with or among outside counsel, which on its face, concern this action; or (2) work product created by counsel in connection with this action.

      e.      The Parties agree to work together to reasonably tailor proposed search terms to avoid the collection of privileged material.

      f.      In the case of a family of documents, only the member or members that are privileged may be withheld. All other members of the family must be produced. To the extent a Party is permitted to withhold from production a family member (e.g., email or attachment) on the basis of privilege, where some or all of the other family members are being produced, the producing Party shall provide a Bates numbered placeholder TIFF image bearing the legend,

"DOCUMENT WITHHELD FOR PRIVILEGE." Redactions of Privileged Information or other withheld information will be clearly signified by including the word "Redacted" on the document or image. For redacted documents, a text file shall be created using OCR and shall be produced in lieu of extracted text. The searchable text file will include the word "Redacted."

      g.      To the extent possible, any Microsoft Excel or other spreadsheet file to be produced that requires redaction will be produced in native redacted format. If such production is not possible, the document shall be produced in TIFF image format per Paragraph III.a above, manually formatted using the following page settings:

>Landscape orientation
>Page order — over then down
>Scaling set to render columns easily readable
>All hidden data revealed

Alternatively, if a spreadsheet file cannot be converted to an image that is usable for redaction purposes, a Party may produce redacted Excel or spreadsheet files in a native redacted format.

      h.      The Parties will meet and confer to determine a method for handling production of any audio or video files which require redaction.

## VIII. NON-WAIVER PROTOCOL

Except for intentional waiver, the production of privileged or work-product protected ESI or Hard Copy Materials is not a waiver of the privilege or protection from discovery in this Action or in any other proceeding. This ESI Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

Nothing in this ESI Order is intended to or shall serve to limit a Party's right to conduct a review of ESI, Hard Copy Materials, or other information (including metadata) for relevance, responsiveness, or segregation of privileged or protected information before production.

SO ORDERED.

Dated: March 22, 2022
New York, New York

_____
Hon. Analisa Torres
United States District Judge